IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| IN THE MATTER OF: | ) | |
| | ) | |
| MARK M. ROSE, | ) | |
| | ) | CASE NO. BK05-83572-TJM |
| Debtor(s). | ) | A05-8088-TJM |
| BANK OF NEBRASKA, | ) | |
| | ) | |
| Plaintiff, | ) | CH. 7 |
| | ) | |
| vs. | ) | |
| | ) | |
| MARK M. ROSE and THOMAS D. | ) | |
| STALNAKER, Chapter 7 Trustee, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This matter is before the court on the debtor-defendant's motion for summary judgment (Fil. #120), joinder by the Chapter 7 trustee (Fil. #122), and resistance by the plaintiff (Fil. #135). Barbara Lohr Van Sant represents the debtor, John D. Stalnaker represents the trustee, and Joel M. Carney represents Bank of Nebraska. Evidence and briefs were filed and, pursuant to the court's authority under Nebraska Rule of Bankruptcy Procedure 7056-1, the motion was taken under advisement without oral arguments.

The motion is denied.

The debtor borrowed money from the Bank of Nebraska in 2003, 2004 and 2005, and defaulted on a loan. The bank sold the collateral pledged by the debtor, but a deficiency balance of more than $300,000.00, plus interest, exists. The bank filed this adversary proceeding to except that debt from discharge under 11 U.S.C. § 523(a)(2)(B), alleging the debtor made materially false written statements regarding his financial condition upon which the bank, to its detriment, relied. The debtor counterclaimed against the bank, alleging breach of the bank's duty under the Uniform Commercial Code to specifically identify its collateral, as well as its duties to deal in good faith with the debtor, to use reasonable care in the custody and preservation of the debtor's collateral in its possession, and to conduct a commercially reasonable sale of the collateral. The debtor also alleges that the bank converted or allowed the conversion of some of the collateral in its possession. The trustee of the debtor's Chapter 7 bankruptcy estate was eventually joined as a party to the proceedings.

The debtor and the trustee now move for summary judgment in their favor on the plaintiff's complaint and on the debtor's counterclaims.

Summary judgment is appropriate only if the record, when viewed in the light most favorable to the non-moving party, shows there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c) (made applicable to adversary proceedings in bankruptcy by Fed. R. Bankr. P. 7056); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). The court must examine the record to ascertain whether the movant, through depositions, answers to interrogatories, admissions, affidavits, and other evidence, has demonstrated the absence of a genuine issue of material fact. Beard v. Banks, 548 U.S. 521, 529 (2006). If the movant has done so, then the non-moving party, bearing the burden of persuasion, must by affidavit or otherwise set forth specific facts showing that there is a genuine issue for trial. Id. The court does not weigh the evidence, make credibility determinations, or attempt to discern the truth of any factual issue. Great Plains Real Estate Dev., LLC v. Union Cent. Life Ins. Co., 536 F.3d 939, 943-44 (8th Cir. 2008). An issue is genuine if it has a real basis in the record, and a genuine issue of fact is material if it might affect the outcome of the suit. Hartnagel v. Norman, 953 F.2d 394, 395 (8th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Blocker v. Patch (In re Patch), 526 F.3d 1176, 1180 (8th Cir. 2008) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). In ruling on a motion for summary judgment, the court must view the facts in the light most favorable to the party opposing the motion and give that party the benefit of all reasonable inferences to be drawn from the record, without resorting to speculation. Hitt v. Harsco Corp., 356 F.3d 920, 923-34 (8th Cir. 2004).

The following facts are uncontroverted:

1. Mark M. Rose, the debtor-defendant herein, filed a voluntary petition commencing this Chapter 7 case on September 11, 2005.

2. Bank of Nebraska filed this adversary proceeding on December 10, 2005.

3. Mr. Rose filed his amended answer and counterclaims on May 16, 2008.

4. The bank filed its answer to the counterclaims on June 19, 2008.

5. At all times relevant herein, Bank of Nebraska was a bank duly organized and existing under and pursuant to the laws of the State of Nebraska with its principal office and place of business located in Papillion, Sarpy County, Nebraska.

6. Mr. Rose was at all times relevant herein an individual operating an unincorporated business called Great View Window Company in Sarpy County, Nebraska.

7. Great View Window Company operated in two successive locations: 1124 Applewood Drive, Papillion, Nebraska, and 13232 Portal Drive, Suite 8, La Vista, Nebraska.

8. The bank made a loan to Mr. Rose on February 28, 2005. Mr. Rose executed and delivered to the bank the promissory note number 7000988. Said promissory note was one of a series of notes between Mr. Rose and the bank; those prior notes were numbered 7003264, 7000762 and 7003265.

9. The bank took possession of coins belonging to Mr. Rose in five safe deposit boxes, three of which were of the dimensions of 10 x 10 x 25 inches, and two of which were of the dimensions of 5 x 10 x 10 inches.

10. Bank vice-president Kevin Dasher kept all the keys to those safe deposit boxes after October 2004.

11. Mr. Dasher entered the boxes after October 2004, prior to any default by Mr. Rose.

12. Mr. Dasher retained the lists of coins provided to him by Mr. Rose.

13. Mr. Rose surrendered the keys to bank vice-president Richard Copple in May 2005.

14. The bank sold Mr. Rose's coins at private sale.

15. The bank sold Mr. Rose's business inventory and equipment at private sale.

To except a debt from discharge under 11 U.S.C. § 523(a)(2)(B), a creditor must prove, by a preponderance of the evidence, that the debtor obtained money by (1) use of a statement in writing that was materially false; (2) that pertained to his or his business's financial condition; (3) on which the plaintiff reasonably relied; and (4) that the debtor made with the intent to deceive the plaintiff. Jacobus v. Binns (In re Binns), 328 B.R. 126, 129 (B.A.P. 8th Cir. 2005).

A financial statement is materially false if it "paints a substantially untruthful picture of a debtor's financial condition by misrepresenting information of the type which would normally affect the decision to grant credit." Wallander v. Wallander (In re Wallander), 324 B.R. 746, 752 (Bankr. N.D. Iowa 2005) (quoting Burbank v. Capelli (In re Capelli), 261 B.R. 81, 90 (Bankr. D. Conn. 2001)); Capital City Bank & Trust v. Kroh (In re Kroh), 88 B.R. 987, 994 (Bankr. W.D. Mo. 1988) (stating that a financial statement is materially false if it, as a whole, falsely represents the debtor's overall financial condition or contains major omissions).

Reasonable reliance is determined by looking at the totality of the circumstances. First Nat'l Bank of Olathe v. Pontow (In re Pontow), 111 F.3d 604, 610 (8th Cir. 1997). The court may consider if there were any "red flags" that would have alerted the creditor to the possibility that the financial statement was not accurate and whether minimal investigation would have revealed the inaccuracy. Id. (citing Coston v. Bank of Malvern (In re Coston), 991 F.2d 257, 261 (5th Cir. 1993) (en banc)). When a financial statement is inaccurate on its face, and the creditor has knowledge of the inaccuracies, any reliance by the creditor on the financial statement is unreasonable. R & R Ready Mix, Inc. v. Freier (In re Freier), 402 B.R. 891, 899 (B.A.P. 8th Cir. 2009).

For discharge to be barred, the debtor must have acted with intent to deceive. An intent to deceive does not mean that the debtors acted with a "malignant heart." Agribank, FCB v. Webb (In re Webb), 256 B.R. 292, 297 (Bankr. E.D. Ark. 2000)). A creditor may establish such intent by proving reckless indifference to or reckless disregard of the accuracy of the information in a debtor's financial statement. Fairfax State Sav. Bank v. McCleary (In re McCleary), 284 B.R. 876, 888 (Bankr. N.D. Iowa 2002). Factors to consider include whether the debtor was intelligent and experienced in financial matters, and whether there was a clear pattern of purposeful conduct. Id. (citations omitted). Once the creditor establishes that the debtor had actual knowledge of the false statement, the debtor cannot overcome the inference of the intent to deceive with unsupported assertions of honest intent. Heritage Bank of St. Joseph v. Bohr (In re Bohr), 271 B.R. 162, 169 (Bankr. W.D. Mo. 2001).

The parties began their lending relationship in June 2003. The debtor obtained a series of business loans and pledged all of his business assets, a vehicle, and coins from his collection (held in safe deposit boxes at the bank) as collateral. In connection with obtaining and renewing loans at the bank, the debtor completed a personal financial statement for the bank as of February 10, 2004, showing a personal net worth of $912,264.00, of which $897,000.00 was the coin collection. The debtor's collateral schedule in April 2005 showed eligible business accounts receivable and available inventory of nearly $300,000.00, plus coins worth $200,000.00. The last loan the debtor received from the bank was a 10-day demand note in February 2005 for $393,080.04, secured by the business assets and the coins. The debtor defaulted on that note, so the bank called it and accelerated another outstanding loan secured by a vehicle and thereafter liquidated the collateral, leaving a deficiency of $385,106.49 plus interest as of August 3, 2005.

The bank argues that the debtor intentionally misrepresented the value of his assets in order to induce the bank to lend him money. The bank specifically questions the stated values of the business inventory, accounts receivable, and coins, because the bank experienced difficulty in collecting on any of the receivables, sold the inventory for $6,000.00, and sold the coin collection for $14,850.00.

The debtor takes the position that the bank's marketing efforts for the coins, the inventory, and the business itself were inadequate and, if done properly, would have yielded a much greater return.

Much of the outcome of this case will rest on credibility determinations. For example, both parties commissioned appraisals of the coin collection by local coin dealers. The debtor's appraiser valued the collection in January 2008 at between $5,072.814.00 and $7,072,814.00. In contrast, the bank's appraiser valued the collection in 2009 from a written list only and determined that a current value would be between $29,872.64 and $35,903.65, while the 2005 value likely was between $19,872.64 and $25,903.65. Obviously, there is a huge disparity between $25,000.00 and $5 million, which, along with the value of the debtor's business assets, will require fact-finding at trial because it forms the crux of the bank's allegations of intentional misrepresentations regarding the debtor's financial condition.

Likewise, the debtor's allegations about the commercial reasonableness of the bank's disposition of its collateral present a factual issue, because such a determination is dependent upon the particular facts of each case. First Westside Bank v. For-Med, Inc., 529 N.W.2d 66, 70 (Neb. 1995); Chadron Energy Corp. v. First Nat'l Bank of Omaha, 459 N.W.2d 718, 727 (Neb. 1990).

To the extent that the debtor is disputing the perfection of the bank's security interest in the coins, the Uniform Commercial Code makes clear that a secured party may perfect a security interest in such collateral by taking possession of it. Neb. U.C.C. § 9-313(a).

With regard to the debtor's allegations of conversion and lack of reasonable care of the collateral while it was in the bank's custody, those clearly involve credibility issues because it seems to be the debtor's word against the bank officer's word at this point.

For these reasons, the motion for summary judgment is denied in its entirety.

IT IS ORDERED: The debtor-defendant's motion for summary judgment (Fil. #120) is denied.

DATED:      April 29, 2010

                                                BY THE COURT:

                                                /s/ Timothy J. Mahoney
                                                United States Bankruptcy Judge

Notice given by the Court to:
    *Barbara Lohr Van Sant
    John D. Stalnaker
    Joel M. Carney
    U.S. Trustee

Movant (*) is responsible for giving notice to other parties if required by rule or statute.